## FRANK MAXA, JR., ET AL. *v.* COUNTY COMMIS-MISSIONERS OF HARFORD COUNTY.

[No. 54, October Term, 1929.]

*Decided January 9th, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*John S. Young,* for the appellants.

*Charles H. MacNabb;* with whom was *Floyd J. Kintner* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The appeal on this record is from a decree of the chancellor overruling the demurrer of two of the defendants, Frank Maxa, Jr., and Harry Farr, to the bill of complaint of the County Commissioners of Harford County against them and another, named John Reisinger. The plaintiff is a municipal corporation administering the public affairs of Harford County, whose territorial boundaries embrace certain navigable waters of the State of Maryland. Since 1810 there has been a highway extending, as resurveyed in 1858 and again in 1880, from a public road, known as Hall's Cross Road, to a public landing on the shore of navigable water called Swan Creek. The thoroughfare and landing were both established at one time by public authority and have since been continuously controlled, supervised, and maintained by the municipality for the constant use, benefit, and enjoyment of the public. The roadway is two perches wide and runs east and west until, at the beginning of its last eastern course, it turns sharply to the northeast and runs to the water's edge. The public landing is a triangular piece of land, containing about 120 perches, with its apex where the last course of the highway ends at the water, and lying between this final length of the highway on the west and the waters of Swan Creek on the east. There is nothing to indicate that the landing was improved.

After this preliminary descriptive narrative, the bill of complaint avers that the three defendants, who are residents of the vicinity, have entered upon said landing and continuously and habitually occupied it as if it were their private property, by storing and placing therein boats, vessels, timber, and lumber, so as to cover up a great portion of the landing, and thereby preventing the public use of the portion so covered, and hindering and obstructing the full and complete

enjoyment of the landing in the manner in which the public are accustomed and entitled. The bill of complaint also shows that when the plaintiff was informed of the described unauthorized encroachments and public nuisance, the plaintiff immediately protested to the defendants and severally requested them to remove their boats, vessels, lumber, and timber from said landing, so as not further to interfere with its public use, but without effect, and the defendants have defiantly continued their wrongful use and obstruction of the landing by having their said boats, vessels, lumber, and timber remain on the landing.

In view of these circumstances, the plaintiff avers that their continuation will, if not prevented, work irreparable injury by denying to the public the rightful use and enjoyment of the landing, and thereby seriously impair or destroy the public purposes and necessity to which it is dedicated. The relief sought is a mandatory injunction to compel the defendants to remove their subsisting encroachments, and to enjoin them from future obstructions; and for general relief. The chancellor did not grant the injunction, but passed an order requiring the defendants to show cause why it should not issue as prayed; and thereupon two of the defendants demurred to the bill, and, on their demurrer being overruled, took the present appeal.

On these admitted allegations the defendants created and deliberately maintain against the rightful demand of constituted authority a public nuisance on a highway. The landing was provided for the ease, convenience, and accommodation of public travel and the exchange, delivery, transportation, and passage of water and land borne traffic, at a point where the navigable waters of Swan Creek meet the public road. So the occupation of the landing is general and. from its nature, must be temporary, and the transit of travelers and the use of the landing in any lawful way must be reasonably expeditious and consistent with its successive and reasonable enjoyment in common by all the public, whose convenience and necessity are of paramount consideration. *Chaney*

*v. Anne Arundel Co.,* 119 Md. 385, 388; *Bauer v. Refrigerating Co.,* 99 Md. 367, 376, 377; *Turner v. Hollzman,* 54 Md. 148, 157. The defendants, however, have permanently or habitually occupied the landing with their personal property, and have thereby destroyed the use of the landing in the manner to which the public is entitled. This unauthorized encroachment upon public property affects the rights of the public in their aggregate capacity by interfering with the free use of the landing by the individual members of the public who are entitled and have occasion to use the landing for the purposes for which it was designed. *Wood on Nuisances,* secs. 248-263, 480; *Elliott on Roads and Streets* (3rd Ed.), secs. 827-831.

In illegally appropriating to their several use a landing which was for the common enjoyment of the public, the defendants became subject to indictment, but this is not the only public remedy. In addition to the ordinary remedies by abatement and indictment, a court of equity will frequently take jurisdiction of the unlawful obstruction of a public way or place, and restrain or enjoin illegal acts which are prejudicial to its beneficial enjoyment. So, where the obstruction is permanent or habitual, and continuously interrupts the use and encroaches upon the public property or rights, or the remedy by indictment is less certain, prompt and efficacious than those at its command, a court of equity will take jurisdiction. *Elliott on Roads and Streets* (3rd Ed.), secs. 849, 850a, 851.

The arbitrary and constant encroachment of the defendants upon the public landing has been so persistent and enduring that there is no indication that the public wrong resulting from their acts will cease with an indictment. On the other hand, the remedy by equity does away with prolonged and repeated litigation with respect to a clear violation of law, and affords the parties a speedy determination of their respective rights, with remedial processes which are readily moulded to the exigencies of the particular circumstances, so as to abate the nuisance in existence, to restrain

its threatened continuance, and to prevent its renewal. *Carroll County v. Rickell,* 146 Md. 463, 469; *Elliott on Roads and Streets* (3rd Ed.), secs. 532, 533, 849, 451; 2 *Story Equity Juris.* (4th Ed.), secs. 1248, 1251; *High on Injunctions* (4th Ed.), secs. 760, 764, 816.

The County Commissioners of Harford County had charge and control of this public landing, and it was the duty of this governmental corporation to conserve, maintain, and defend the rights of the public to the free and unincumbered enjoyment of this public improvement. *Supra; Code,* art. 25, secs. 161, 162, 1; *Chaney v. Anne Arundel County,* 119 Md. 388.

The nature and gravity of the allegations made it appropriate for the plaintiff to invoke the jurisdiction of a court of equity in order the more promptly and effectively to protect and vindicate the interests of its citizens in the ancient public landing here involved. It follows the decree must be affirmed.

*Decree affirmed, with costs.*